**FOXWORTH–GALBRAITH LUMBER CO.**
**v. SOUTHWESTERN CONTRACTING**
**CORPORATION et al.**

No. 14420.

Court of Civil Appeals of Texas.
Fort Worth, Texas.

Oct. 2, 1942.

Rehearing Denied Nov. 6, 1942.

222

Kilgore & Rogers, of Wichita Falls, for appellant.

Bullington, Humphrey & Humphrey and Harris & Martin, all of Wichita Falls, for appellees.

McDONALD, Chief Justice.

This suit involves principally a contest between two lienholders. The case was tried without a jury, and there appears to be no substantial dispute, if any, as to the facts proved, although the parties disagree as to the legal consequences of the facts proved.

The suit was filed by City National Bank in Wichita Falls, herein designated simply as bank. In its original petition it alleges in substance as follows:

That Southwestern Contracting Corporation, designated in this opinion as contractor, executed a note for $3,500, payable to the bank, dated March 21, 1940, and secured by deed of trust lien on Lot 12 of Block 31 of a certain addition in Wichita Falls; that the contractor executed a second note for $3,500, payable to the bank, dated March 28, 1940, secured by a deed of trust lien on Lot 16, Block 32, of the same addition; that the contractor executed a third note for $5,700, payable to the bank, dated October 16, 1940; that the amount of $8.586.28 is past due and owing on the principal, interest and attorney's fees of the first two notes (the two $3,500 notes); and that $4,190.15 is owing on the third note (the $5,700 note); that the defendant Foxworth-Galbraith Lumber Company, designated in this opinion as lumber company, is asserting some kind of a lien or claim against the property in question, which is inferior to the lien held by plaintiff. It is also alleged that E. V. McCright, a vice-president of the contractor corporation, joined in the execution of the notes. Plaintiff prays for foreclosure of its liens securing the two $3,500 notes, and prays for judgment, without asking for foreclosure of lien, against the contractor and McCright for the unpaid principal, interest and attorney's fees due on the $5,700 note.

In its answer and cross-action, the lumber company alleges that the bank actually advanced less than $3,500 on each of the loans secured by the two deeds of trust. It alleges in particular that only $2,500 was advanced against one of the lots, and only $2,632 against the other, and that the lumber company tendered payment to the bank, before its notes were turned over to attorneys, of the full amounts actually secured by the bank's liens. The lumber company prays that no foreclosure be allowed in favor of the bank above the amounts just mentioned.

The bank filed a pleading in answer to that of the lumber company, designated as an answer to it. In it the bank alleges that on March 21st and March 28th, respectively, of 1940, the contractor executed the two notes for $3,500 each, and the two deeds of trust; that at that time the contractor was engaged in the construction of numerous houses in Wichita Falls, and that it was agreed and understood at that time between the bank and the contractor that the bank would advance to the contractor the amount of $7,000, when needed by the contractor for the construction of houses on the two lots in question, and that at the time the notes were executed the bank advanced $2,500 on each of said notes, and later advanced to the contractor the sum of $5,700; that the advancements were made by reason of the execution of the two $3,500 notes; that the bank has advanced to the contractor a to-

tal of $10,700, upon which amount there has been paid the sum of $2,107.01, leaving a balance due and owing of $8,592.99, besides interest and attorney's fees, "which amount is secured by the two deeds of trust liens hereinabove described"; and that if defendant lumber company has any claim, it is inferior to the two deeds of trust held by plaintiff; that as evidence of said advancements, the contractor executed two $2,500 notes and one $5,700 note; that as the advancements exceeded the amount of the two $3,500 notes, the bank demanded that McCright individually execute the $5,700 note. The prayer for recovery in this pleading is not entirely clear to us, but perhaps it can be construed as asking for judgment and foreclosure on all of the notes held by the bank.

The evidence reflects that the two original $2,500 notes were each several times renewed, a part of the interest being paid, but nothing being paid on the principal. The sum of $2,107.01 was paid on the $5,700 note. As to the application of this payment, more will be said later in this opinion.

After all of the above notes were given to the bank, the contractor gave two notes to the lumber company, and deeds of trust securing them. One of the deeds of trust covered one of the lots in question, the other deed of trust covered the other lot. One of them recited that it was inferior to a lien of $2,632 in favor of the bank, and the other recited that it was inferior to a lien of $2,500 in favor of the bank.

The effect of the judgment rendered by the trial court is to allow the bank a recovery of $3,500 principal, plus interest and attorneys' fees, and foreclosure of lien, against each of the lots, and to allow the bank a money judgment only against the contractor and McCright upon a portion of the $5,700 note, the amount being arrived at as follows: enough of the $5,700 note was allocated, so to speak, to the secured portion of the loan transactions, so as to give the bank a secured loan of $3,500 against each of the lots. The payment of $2,107.01 was then applied to the unsecured portion of the $5,700 note. Such calculations resulted in judgment in favor of the bank for foreclosure of lien in the amount of $4,238.70, including principal, interest and attorney's fees, against each of the lots, and judgment for an unsecured debt of $2,144.93.

Speaking in terms of dollars and cents, the controversy involves the difference between the amount tendered by the lumber company to the bank as the total amount secured by liens against the two lots, to-wit, approximately $5,100, and the total of the two liens as adjudged by the trial court, to-wit, approximately $8,500. Although the contractor and McCright filed answers, they do not appear otherwise to have contested the suit, nor have they appealed.

The lumber company has appealed, presenting the contentions which we shall discuss.

The lumber company urges that the pleadings of the bank do not support the proof offered, and that neither the pleadings nor the proof supports the judgment.

As above set out, the bank's original petition alleges the execution of the two $3,500 notes, in March, 1940, and the execution of the $5,700 note in October, 1940. We find no allegations in this pleading which can be construed as alleging that the bank has or claims a lien to secure payment of the $5,700 note. The answer which the bank filed, in response to the lumber company's answer and cross-action, does not purport to be an amended petition, nor does it have the requisites of one. It is not complete within itself, and obviously is not intended to be a substitute for the original petition.

The bank refers us to our new procedural rule No. 67, Texas Rules of Civil Procedure. As amended by Order of March 31, 1941, this rule reads as follows:

"Rule 67. *Amendments to Conform to Issues Tried Without Objection.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. In such case such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made by leave of court upon motion of any party at any time up to the submission of the case to the Court or jury, but failure so to amend shall not affect the result of the trial of these issues; provided that written pleadings, before the time of submission, shall be necessary to the submission of special issues, as is provided in Rules 277 and 279."

224

In our judgment the language of this rule effects a change in our rules relating to the necessity of pleadings to support proof and judgment. Apparently the rule does not apply to cases where special issues are submitted. The instant case was tried before the court without a jury, so the rule would seem to apply. It appears to provide in plain language that issues which are not raised by the pleadings may nevertheless be tried, and judgment rendered thereon, if the parties expressly or impliedly agree thereto. The question might occur: If one or more of the issues can be tried without pleadings, why cannot all the issues be tried without pleadings? A consideration of our Rules of Procedure as a whole leads us to believe that the first sentence of Rule 67 is not intended to establish a general rule of practice, but is intended to cover the exceptional case where it clearly appears from the record as a whole that the parties tried out a controverted issue, perhaps having overlooked the omission in the pleadings, or else having failed to plead carefully or clearly the issues upon which the case was tried. It is our opinion that the rule should be applied only with care, and in no event in a doubtful situation.

The law appears to be settled in Texas that parties may make a note and deed of trust for a definite amount, upon the agreement that some or all of the money will be advanced at a later date; and that in such event the holder of the note and mortgage will have a valid lien to secure the amount of the money actually advanced, provided it does not exceed the amount stipulated in the original note and mortgage, even though the mortgage does not expressly provide that it shall secure future advances. Glenn v. Seeley, 25 Tex. Civ.App. 523, 61 S.W. 959; Openshaw v. Dean, 59 Tex.Civ.App. 498, 125 S.W. 989. See, also, 19 R.C.L. 286; 41 C.J. 411, 456, 462. Thus, upon proper pleading, the bank would have had the right to prove that it advanced the full amount of the mortgage, even though the advancements were evidenced by notes executed later.

Without objection from the lumber company, the bank devoted itself to proving that it had advanced to the contractor the full amounts of the two mortgages, and the lumber company inquired diligently of the two witnesses appearing for the bank as to the amounts of the advancements actually made upon these two mortgages. Especially did both parties inquire of the witnesses regarding the $5,700 note. The lumber company raised no objections on the ground that the evidence offered was not supported by the pleadings. While a new cause of action may not be set up for the first time in a supplemental petition, as distinguished from an amended petition, as is held in Wegener v. Erdman, Tex.Civ. App., 154 S.W.2d 969, and in cases there cited, we believe that the allegations contained in the supplemental pleading of the bank may be considered in this particular case in determining whether the parties, by express or implied consent, tried the issue of the amounts of advancements made on the mortgages. It is also to be observed that the lumber company raised no objections to the supplemental pleading filed by the bank.

We are of opinion that Rule 67 is applicable to the situation now before us, and that we should overrule appellant's contention that the pleadings of the bank are insufficient to support the judgment rendered.

Interpretations of Federal Rules of Civil Procedure, rule 15(b), 28 U.S.C.A. following section 723c, from which our Rule 67 is taken, may be found in Low v. Davidson Mfg. Co., 7 Cir., 113 F.2d 364, and Lientz v. Wheeler, 8 Cir., 113 F.2d 767.

This brings us to the question of the sufficiency of the proof to support the judgment.

While the pleadings of the bank are confusing, and to some extent inconsistent, it seems to us that the evidence shows clearly that the bank had the agreement with the contractor, and made advances to the contractor, as it claims. Two of the officers of the bank testified positively that $2,500 was first advanced against each piece of property, and that the contractor later received other money which completed the amounts of the advancements theretofore agreed upon. They testified that the final advancements were included in the $5,700 note. No witness testified to the contrary. There is some indication in the testimony that the bank's records were not as complete as they might have been, but such testimony is not enough to overcome as a matter of law the direct statements of the bank's witnesses that the entire amounts of the liens were advanced to the contractor, and were included in the notes given to the bank.

Appellant contends that the payment of $2,107.01 which was made on the $5,700 note should, as between the bank and the lumber company, be applied to the payment of the secured portion of the $5,700 note. There is no testimony showing that the debtor directed how the payment should be applied. In the absence of any direction by the debtor, the holder of the $5,700 note would under familiar rules have had the right to apply the payment as it saw fit. The bank's witnesses did not testify directly whether any application of the payment had been made, before suit, as between the secured and the unsecured portion of the $5,700 note. But we think that it can reasonably be inferred from the evidence that the bank advised the lumber company before the suit was filed that it contended that it had a lien covering $7,000 of indebtedness, as distinguished from the amount of approximately $5,100 tendered by the lumber company to the bank. This indicates that the payment mentioned had been applied by the bank to the unsecured portion of the indebtedness. Since the bank was under no obligation to apply the payment in such way as to benefit the lumber company, to the prejudice of the bank, we find nothing in the evidence to justify a holding that the trial court was in error in applying the payment to the unsecured indebtedness.

Appellant argues that the trial court, in rendering judgment, figured interest on the notes, as finally renewed, at ten per cent per annum, and that the deeds of trust given to the bank provide for interest at only six per cent. The notes in evidence provide for interest after maturity at ten per cent. The deeds of trust are not shown in the record before us. The only reference as to interest is that contained in a stipulation to the effect that the deeds of trust, respectively, recite "that it is given to secure one note for $3500.00, with 6% interest from date, due 90 days after its date". In view of the fact that the deeds of trust, taken under the circumstances above detailed, were sufficient to secure the notes later given, we are inclined to the view that they were sufficient notice to the lumber company of the provisions in the notes calling for ten per cent interest after maturity. Appellant's contention is overruled.

The judgment of the trial court is affirmed.